UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 1:04-cr-5363 OWW |
| | ) | |
| Plaintiff, | ) | MEMORANDUM DECISION RE: |
| | ) | GOVERNMENT'S MOTION TO |
| v. | ) | DISQUALIFY DEFENSE COUNSEL |
| | ) | AND SETTING FURTHER STATUS |
| RICHARD RILEY, | ) | CONFERENCE FOR |
| | ) | JUNE 27, 2005 AT 1:30 P.M. |
| Defendant. | ) | |
| | ) | |

Before the court is the government's motion to disqualify defense counsel, Barry V. Voss, Esq., one of the attorneys for Defendant Richard Riley. The motion was heard April 25, 2005. The Plaintiff was represented by Kevin R. Rooney, Esq., Assistant United States Attorney. Defendant Richard Riley was represented by Anthony Capozzi, Esq., and Barry V. Voss, Esq., a licensed and practicing attorney in the State of Minnesota, admitted pro hac vice in this case.

The Court considered the declarations under penalty of perjury of attorney Voss; attorney James Elia; a defendant in a related drug trafficking case, Joseph Cramer; exhibits; representations and arguments of counsel at the hearing of the motion; and points and authorities in support of and opposition

1

to the motion.  All were fully considered by the Court.  Based on the entire record of proceedings in this motion to disqualify counsel, the following order is entered.

## FACTS

The indictment against defendant Richard Eugene Riley charges that he allegedly arranged for the transportation of cocaine and methamphetamine from Fresno, California, in the Eastern District of California, to Minneapolis/St. Paul, Minnesota, in the District of Minnesota.  A June 4, 2003, surveillance by law enforcement of Humberto Esquivel Leon, revealed that Leon exchanged vehicles with Joseph Cramer and Todd Wothe.  Mr. Wothe was prosecuted with Mr. Cramer in case number 1:03-CR-5241 OWW.  Humberto Leon was prosecuted in case number 1:03-CR-5322 OWW and is awaiting sentencing.  On or about June 4, 2003, Mr. Leon was observed to exchange vehicles with Mr. Cramer and Mr. Wothe.  Mr. Leon drove away from the meeting in a van with Minnesota license plates, registered to Mr. Wothe.

The van was subsequently stopped and ten kilograms of cocaine and two pounds of methamphetamine were found in a hidden compartment.  Mr. Cramer and Mr. Wothe, both of whom have pled guilty, are cooperating with the government.  Each has indicated that they left the van registered to Mr. Wothe with Mr. Esquivel Leon, with knowledge that the van would be returned with drugs concealed inside it.  Mr. Cramer and Mr. Wothe have provided information that Defendant Riley was the owner/purchaser of the drugs and that they were couriers for Mr. Riley.

On June 20, 2003, Mr. Cramer and Mr. Wothe were arraigned in

2

1  the United States District Court for the Eastern District of
2  California, Fresno, in case number 1:03-CR-5241 OWW.  Both were
3  ordered detained.  Attorney Jim Elia appeared and was appointed
4  attorney of record on behalf of Mr. Cramer.
5       Eight days later, attorney Barry V. Voss, visited Mr. Cramer
6  at the Fresno County Jail.  Ex. 2, Jail Event Log; Ex. 3
7  Declaration of attorney Jim Elia; Ex. 4 Declaration of AUSA Kevin
8  Rooney.  The parties agree that attorney Voss did not consult
9  with attorney Elia before he contacted Mr. Cramer.  Mr. Voss's
10 declaration asserts that he was telephoned by "a person" who
11 stated that "Joseph Cramer had been arrested in the Fresno,
12 California, area and was interested in hiring an attorney from
13 Minnesota."  Mr. Voss goes on to state that he was asked by "the
14 person" if he would practice in Fresno, California, and, if not,
15 could he recommend a lawyer who could represent Mr. Cramer.  In
16 fact, Mr. Cramer is also represented by Mr. Anthony Capozzi, a
17 Fresno, California, attorney who is well known to the Court, is
18 highly experienced and competent in trial practice before the
19 federal courts, is a former U.S. Attorney and an actively
20 practicing criminal defense lawyer who has tried many cases in
21 the Eastern District of California.
22      Through Mr. Voss's office staff, he was able to determine
23 Mr. Cramer had been arrested in San Joaquin County, California,
24 in the Eastern District of California and charged in State Court.
25 Mr. Voss's office was told by the San Joaquin County Clerk that
26 Mr. Cramer was then brought to Fresno, California, where Mr.
27 Cramer faced Federal charges.
28      Mr. Voss had his office staff obtain copies of documents on

3

1  file with the Clerk of the Superior Court of California, County
2  of San Joaquin, so that Mr. Voss could understand the charges
3  pending against Mr. Cramer.
4      Mr. Voss states that he had his office call the United
5  States District Court for the Eastern District of California,
6  Fresno Division, in an effort to determine whether Mr. Cramer had
7  appointed counsel.  This effort was unsuccessful in determining
8  whether an attorney had been appointed to represent Mr. Cramer.
9      Mr. Voss had prior family plans to be in San Francisco,
10 California, on the 28th of June, 2003, and on June 27, 2003, Mr.
11 Voss flew to San Francisco, California, and drove to Fresno,
12 California, to see Mr. Cramer the morning of June 28.  Mr. Voss
13 arrived in Fresno, California, at approximately 12:15 p.m. on
14 June 28, 2003.
15     Mr. Voss spent no more than ten minutes in an interview room
16 at the Fresno County Jail, including the time it took for the
17 U.S. Marshal to bring Mr. Cramer to the interview room.
18     In the interview room, after meeting Mr. Cramer, Mr. Voss
19 handed Mr. Cramer his (Voss's) business card and told Mr. Cramer
20 that Mr. Voss had received a telephone call from one of Mr.
21 Cramer's "friends," who indicated that "he" was looking to hire
22 an attorney.  Mr. Voss asked Mr. Cramer if he had an attorney.
23 Mr. Cramer stated he had a public defender, but that "he was
24 interested in having retained counsel to represent him; someone
25 from Minnesota."  Mr. Voss asked Mr. Cramer to call Mr. Cramer's
26 public defender to let the defender know whether Mr. Cramer was
27 going to hire private counsel.
28     Mr. Voss asked Mr. Cramer for his public defender's name.

Mr. Cramer could not recall any name, nor could he recall his attorney's telephone number.  Mr. Voss told Mr. Cramer that Mr. Voss would attempt to identify Mr. Cramer's attorney and contact the attorney.  At no time during the interview did Mr. Voss ask Mr. Cramer specifics about the case, such as Mr. Cramer's involvement in the matter leading to his arrest or whether Mr. Cramer was willing to cooperate with the government.

It is Mr. Voss's practice not to have substantive discussions with a potential client; Mr. Voss waits until he has been retained to establish an attorney-client relationship to protect conversations with the client.  During the initial visit with a prospective client, Mr. Voss never has an investigator accompany him to the interview.

Mr. Voss advised Mr. Cramer that if Mr. Cramer was interested in retaining his (Mr. Voss's) services that Mr. Cramer should have a family member or relative contact Mr. Voss so that Mr. Voss could make arrangements to represent Mr. Cramer.  Mr. Cramer stated he would talk with his family and get back to Mr. Voss.

Mr. Voss left the jail and returned to San Francisco, drove to Oakland, California, that evening with his wife to visit his wife's cousin.

The following week Mr. Voss had his office contact the Clerk's Office in the Eastern District of California, Fresno Division, to identify Mr. Cramer's public defender.  The public defender was identified as Mr. James Elia.  Mr. Voss called Mr. Elia's office to advise Mr. Elia that one of Mr. Cramer's friends had contacted Mr. Voss as Mr. Cramer was seeking to hire private

counsel.  Mr. Voss left a message for Mr. Elia; Mr. Elia did not return Mr. Voss's telephone call.  When Mr. Voss did not hear from Mr. Elia, he called Mr. Elia again, two days later.  This time he reached and spoke to Mr. Elia.  Mr. Voss identified himself and told Mr. Elia that Mr. Voss had received a telephone call from one of Mr. Cramer's "friends" and visited with Mr. Cramer in the Fresno Jail.  Before Mr. Voss could continue, Mr. Elia "began yelling that I had no business visiting his client without first notifying him."  Mr. Voss stated to Mr. Elia that he was unable to identify Mr. Cramer's public defender before Mr. Voss saw Mr. Cramer.  Mr. Voss told Mr. Elia that was the reason he was calling, once Mr. Voss was able to obtain Mr. Elia's name and telephone number.  Mr. Voss told Mr. Elia that Mr. Voss left his business card with Mr. Cramer and asked Mr. Cramer to contact his public defender and have the public defender call Mr. Voss.  Mr. Voss asserts that Mr. Elia was "becoming progressively louder and rather than continuing listening to his abusive language, (Mr. Voss) hung up on him."

Mr. Voss declares he, thereafter, had no further contact with Mr. Cramer or anybody associated with this case until December 14, 2004, approximately one and one-half years later, when Mr. Voss received a telephone call from Richard Riley, who was in a Minnesota jail.  Mr. Riley asked Mr. Voss to represent him in the case in this Court in which Mr. Riley had been indicted.

Mr. Voss declares that before December 14, 2004, he had never spoken to Richard Riley nor did Mr. Voss know who Mr. Riley was.  Mr. Voss did not know the name Richard Riley.  Mr. Voss, in

6

1  December 2004, did not associate Mr. Riley with Mr. Cramer, until
2  he was advised by Mr. Rooney that Mr. Rooney knew Mr. Voss had
3  visited Joseph Cramer in the Fresno County Jail in Fresno,
4  California.
5      Mr. Voss declares that on June 20, 2003, when he saw Joseph
6  Cramer, he had not been hired to represent Richard Riley, and had
7  never heard of Richard Riley.  Mr. Voss notes that Mr. Elia's
8  declaration omits reference to the conversation on the phone
9  between Mr. Elia and Mr. Voss, after Mr. Voss met with Mr.
10 Cramer.
11     Mr. Voss disagrees with Mr. Elia's declaration and denies
12 that he asked Mr. Cramer what, if any, information Mr. Cramer
13 provided to the police or that he, Mr. Voss, refused to identify
14 the "friend" who sent Mr. Voss to see Mr. Cramer.
15     Mr. Voss denies Mr. Elia's declaration that Mr. Voss said
16 anything to Mr. Cramer that could be construed as a threat,
17 implied or express.  Mr. Voss had no other contact with Mr.
18 Cramer.  Mr. Voss asserts that "I did not copy or fax to anyone
19 any of the documents I obtained from the Clerk of the Superior
20 Court of California (County of San Joaquin)."  Mr. Voss's
21 declaration does not address whether anybody on his behalf or
22 associated with him, copied or faxed to anyone, the documents
23 obtained from the Clerk of the Superior Court of California,
24 County of San Joaquin in June 2003, pertaining to Mr. Cramer and
25 Mr. Wothe's case in State Court.
26      Mr. Voss agrees that he met Mr. Rooney in the Federal
27 Courthouse in St. Paul, Minnesota, on December 16, 2004, denies
28 he had any prior meeting with Mr. Rooney in that court, or that

7

1  Mr. Rooney showed him documents from the Fresno Jail at that
2  time, and asserts that Mr. Rooney told Mr. Voss that Mr. Rooney
3  had documentation indicating that Mr. Voss had visited the Fresno
4  County Jail.  Mr. Voss asserts that he told Mr. Rooney then, that
5  Mr. Voss had been to the Fresno County Jail and visited with
6  Joseph Cramer.
7     Mr. Voss notes that Mr. Rooney's declaration omits reference
8  to Mr. Voss's telephone conversation with Mr. Elia the week
9  following Mr. Voss's return from California.
10    Exhibit 3, the declaration under penalty of perjury of
11 attorney Jim Elia, establishes that he was appointed as counsel
12 of record for Joseph Cramer June 20, 2003, in Eastern District of
13 California, Fresno, case number 1:03-CR-5241 OWW and appeared
14 with Mr. Cramer in open court on that day.  Mr. Elia learned that
15 Mr. Voss met with Mr. Cramer on June 28, 2003.  Mr. Voss did not
16 ask permission, nor did Mr. Elia give permission for Mr. Voss to
17 meet with Mr. Cramer.  Mr. Elia was not present at the meeting
18 and had not spoken to Mr. Voss or anyone from his office before
19 the meeting.  Mr. Elia learned of the meeting from his client and
20 from a review of the jail record provided to Mr. Elia by law
21 enforcement.
22    Mr. Elia reports that Mr. Cramer informed Mr. Elia that
23 attorney Voss had discussed the pending case with him and that
24 this discussion had taken place after Mr. Elia appeared in open
25 court with Mr. Cramer on June 20, 2003.
26    Mr. Elia declares that Mr. Voss asked Mr. Cramer what Mr.
27 Cramer told the police and if Mr. Cramer intended to give the
28 police information.  Mr. Elia declares that Mr. Voss advised Mr.

8

Cramer that "Mr. Cramer had friends in Minnesota who would help Mr. Cramer."  Although Mr. Cramer asked Mr. Voss who these friends were, Mr. Voss did not provide Mr. Cramer with any names.

Mr. Cramer told Mr. Elia that neither Mr. Cramer nor his family had retained attorney Voss or had spoken with Mr. Voss before June 28, 2003.  Mr. Cramer told Mr. Elia that Mr. Cramer felt threatened by attorney Voss's visit and Mr. Cramer believes the visit was intended to convey an implicit threat of retaliation should Mr. Cramer cooperate with law enforcement.

Law enforcement and court records show that the State Court documents related to Mr. Cramer and Mr. Wothe's case in State Court in San Joaquin County were faxed from the Superior Court of California, County of San Joaquin, to a hotel in San Francisco where Mr. Voss's paralegal was staying in the June 27-28, 2003, time period.  Law enforcement records also established that on July 30, 2003, Humberto Esquivel Leon was arrested at and his Parlier home was searched pursuant to a search warrant.  Copies of the court documents bearing the State Court's fax legend to the 415 area code at the hotel where Mr. Voss's paralegal stayed in San Francisco, were recovered from Mr. Leon's home on July 30, 2003.

On July 30, 2003, a motorcycle with Minnesota license plate number 34-151 MD was parked at the Parlier residence of Mr. Leon.  A traffic citation in the possession of law enforcement shows that on July 23, 2001, Mr. Riley was riding a motorcycle with the same license plate in Ramsey County, Minnesota.  Ex. 1.

///
///

## LAW AND ANALYSIS

The government advances a number of grounds to support its motion to disqualify attorney Voss: (1) that Mr. Voss has become a witness relevant to show a connection between Mr. Cramer, Mr. Riley, and Mr. Leon; (2) that as a witness, Mr. Voss has divided loyalties between arguing his own credibility and Mr. Riley's interest in presenting an exculpatory version of events regarding Mr. Voss's meeting with Mr. Cramer and documents apparently first transmitted to Mr. Voss's paralegal in June 2003, which were seized at the residence of Mr. Leon by July 30, 2003; (3) conflict of interest based on Mr. Voss's potential exposure to criminal liability for alleged witness tampering or obstruction of justice and the undivided duty of loyalty owed Mr. Riley as his client; (4) avoidance of the appearance of impropriety under Eastern District of California Local Rule 83-180(e).

The government correctly notes that a criminal defendant has the presumptive right to counsel of defendant's choice, but the right is not absolute. *Wheat v. United States*, 486 U.S. 153, 164 (1988). Where a conflict of interest exists or other grounds for disqualification are established, the presumptive right to counsel is overcome. *Wheat*, 486 at 159-60. The nature of the conflict need not be actual, rather a potential conflict of interest is sufficient for disqualification. *Wheat*, 486 U.S. at 163.

The Court has an independent duty to assure that all legal proceedings appear fair and are fairly conducted and that criminal trials are conducted in accordance with ethical standards of the legal profession. *Wheat*, 483 U.S. at 160.

**Attorney as Witness**

The "advocate-witness" rule prohibits an attorney from appearing as both a witness and an advocate in the same litigation.  *United States v. Prantil*, 764 F.2d 548, 552-53 (9th Cir. 1985); *U.S. v. Hermanek*, 289 F.3d 1076, 1098 (9th Cir. 2002) (applying rule to prosecutor).

Here, even if the visit by Mr. Voss to Mr. Cramer, is considered, *arguendo*, accepting Mr. Voss's version of the contact, no explanation is offered why Mr.Voss did not continue to contact the District Court to ascertain the identity of Mr. Cramer's federal attorney.  If no violation of the rule prohibiting contact of a represented party by another attorney, there remains the substantial likelihood that Mr. Voss is a material witness on the issue of whether his visit was intended to expressly or impliedly threaten, deter, or otherwise influence Mr. Cramer's cooperation with the government and who made the request Mr. Voss represent Mr. Cramer and whether that person has any connection with alleged Minnesota-based co-conspirators. Although Mr. Voss testifies he had no knowledge of Mr. Riley, the government's theory is that Mr. Riley is not the only Minnesota-based co-conspirator; that Mr. Cramer and Mr. Wothe were from Minnesota and were couriers; and there may be evidence that other persons based in Minnesota or elsewhere, with ties to Mr. Riley, would have had reason to call Mr. Voss, misrepresent their relationship to Mr. Cramer, in an effort to "send a message" of deterrence to Mr. Cramer.

An entirely separate ground to believe Mr. Voss will be a witness exists by virtue of the fact that State Court documents

concerning the San Joaquin County case of Messrs. Wothe and Cramer were faxed by the State Court to Mr. Voss's paralegal at a San Francisco hotel on or about June 28, 2003.  Copies of the same documents were found approximately one month later at Mr. Leon's residence at the time Mr. Leon was arrested, his residence searched pursuant to warrant, following seizure of substantial quantities of cocaine and other controlled substances in Mr. Cramer's van.  A motorcycle registered to Mr. Riley was found on July 30, 2003, at the Leon residence in Parlier, California.  Mr. Riley had received a traffic citation less than a month earlier on that same motorcycle in Minnesota, is further circumstantial evidence tying Mr. Riley to Mr. Leon to Mr. Cramer and Mr. Wothe.  It is highly coincidental that as soon as Mr. Riley is indicted in this case, Mr. Voss appears as Mr. Riley's attorney.  That documents about Mr. Cramer and Mr. Wothe's criminal case in State Court were seized in the residence of Mr. Leon within a month after the documents were faxed to Mr. Voss's paralegal is material to the government's view of the case that there was a conspiracy in 2003 involving Mr. Wothe, Mr. Cramer, Mr. Leon, and Mr. Riley.  Except for Mr. Leon, the alleged supplier, all of these individuals are Minnesota residents.  It is axiomatic that common legal representation has been an element of circumstantial evidence that can establish a conspiracy. *United States v. Friedman*, 593 F.2d 109, 112 (9th Cir. 1979).  Where an attorney has represented a witness who has information about a later prosecution and the same attorney represents a defendant in the later case, the court has a duty to inquire as to the existence and extent of any conflict that might violate the Sixth

Amendment.  *United States v. Morando*, 628 F.2d 535, 536 (9th Cir. 1980).

Role of Counsel as Potential Witness

Where counsel has personal knowledge of events that make him either an "unsworn witness" or an actual witness disqualification is appropriate.  *United States v. Merlino*, 349 F.3d 144, 152 (3d Cir. 2003).  *See Optyl Eyewear Fashion Intern. Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1048-49 (9th Cir. 1985) (discussing standards for disqualification of attorney who may be a trial witness).

On the other hand, Mr. Riley may seek to have attorney Voss testify to Mr. Voss's version of events as to his meeting with Mr. Cramer to deny that Mr. Voss had any influence or attempted intimidation of Mr. Cramer.  In either event, it is likely inevitable that the government will call Mr. Cramer to testify that he interpreted the statements of Mr. Voss at the jail meeting, allegedly resulting from an unidentified "friend," who Mr. Voss would not identify to Mr. Cramer or the court, as an implied threat that Mr. Cramer should not cooperate or testify. The failure of Mr. Voss to explain who the "friend" was and what relationship the "friend" had to Mr. Cramer or to anybody else who might be a participant in the alleged conspiracy, raises more questions.  The Minnesota-based alleged co-conspirators had a strong incentive to discourage Mr. Cramer and Mr. Wothe from cooperating or testifying about any aspect of the alleged conspiracy.  That a Minnesota attorney traveled to California, spoke to Mr. Cramer, stated words in a manner that Mr. Cramer

13

interpreted as threatening, and whose paralegal obtained documents that were within the hands of another California-based alleged co-conspirator less than a month later, who was found in possession of substantial quantities of cocaine and methamphetamine, with Mr. Riley's Minnesota-licensed motorcycle on Mr. Leon's property, is highly probative circumstantial evidence and inextricably involves Mr. Voss as a witness.

### Attorney Voss's Personal Conflict of Interest Based On Potential Liability

Where counsel's conflict of interest adversely affects the lawyer's performance, constitutional error occurs and prejudice is inherent in the conflict. *U.S. v. Newell*, 315 F.3d 510, 516 (5th Cir. 2002), *rev'd on other grounds*. The government argues that Mr. Voss has potential criminal liability under 18 U.S.C. §§ 1512(b) and (c) (witness tampering) and 18 U.S.C. § 2 (aiding and abetting), *citing United States v. Merlino*, 349 F.3d at 150-51. Here, to the extent that the argument could be made that witness tampering, influence, or attempted obstruction of justice by dissuading a witness from cooperating with the government or testifying puts Mr. Voss at risk. Mr. Voss must analyze every move he makes in this case from the standpoint of his personal exposure, as well as evaluating the interests of his client, Mr. Riley. *See also Mannhalt v. Reed*, 847 F.2d 576, 581 (whether or not attorney actually testifies, firsthand involvement in events would cause argument to jury about attorney's testimony to be viewed as a statement of a witness as well as of an advocate).
///

**Conduct Which Degrades Or Impugns The Integrity Of The Court**

Eastern District of California Local Rule 83-180(e) prohibits any attorney admitted to practice before the Eastern District of California from engaging in any conduct which degrades or impugns the integrity of the court or which in any manner interferes with the administration of justice. Even drawing all inferences in favor of attorney Voss, Mr. Voss's presence and representations to Mr. Cramer about an unidentified "friend" who wanted to see that Mr. Cramer was represented, raised the implication of a threat in the mind of Mr. Cramer. That Mr. Cramer says so establishes the appearance of misconduct and/or impropriety and puts it in issue. Moreover, Mr. Cramer's testimony is susceptible to the inference that counsel's presence and, even if unintended, purpose was to deter cooperation by Mr. Cramer with law enforcement and to keep Mr. Cramer from testifying.

The totality of facts surrounding Mr. Voss's prior attempted representation of Mr. Cramer and the presence of court documents that were in his paralegal's possession days later, indisputably creates the appearance of impropriety, even if all the circumstances are innocent.

**Counsel's Reply**

The first argument advanced by Mr. Voss is that his purpose was entirely innocent in inquiring of Mr. Cramer about representation by a Minnesota attorney at the request of a "friend." Even if circumstances can be explained in accordance with Mr. Voss's version of the dispute, the fact that there is a

15

1  dispute and that Mr. Cramer will testify to a version of facts
2  different from the facts Mr. Voss will describe putting Mr.
3  Voss's credibility in issue, and that Mr. Cramer felt threatened
4  by Mr. Voss's presence and communication, is an unassumable risk.
5  It is ultimately unimportant which version of the facts are
6  believed, the fact there is a dispute which implicates Mr. Voss's
7  credibility and role in representing Mr. Riley, an alleged co-
8  conspirator, and that the dispute will likely be aired in front
9  of the jury, creates an irreconcilable conflict.

10      Mr. Voss denies that he will be an unsworn witness based on
11 assertions that he had no knowledge, contact, or dealing with Mr.
12 Riley at the time of the Cramer meeting; that he traveled to
13 California to interview Mr. Cramer, when in fact, he was on a
14 planned family trip; and that his contact with a represented
15 party was innocent.  None of this matters, as the circumstantial
16 links between Mr. Voss, Mr. Riley, Mr. Leon, Mr. Wothe, and Mr.
17 Cramer in June and July of 2003 will be issues in the case and
18 Mr. Voss's visit to Mr. Cramer in the jail is an undeniable fact
19 that creates an evidentiary dispute over the purpose of the visit
20 as interpreted by Mr. Cramer, and other evidence tied to Mr. Voss
21 (the State Court documents), linking alleged Minnesota co-
22 conspirators to Mr. Leon in June and July of 2003 along with Mr.
23 Riley.

## CONCLUSION

26      For all the reasons stated above, the conflict of interest
27 between Mr. Voss and Mr. Riley is unwaivable, disqualification of
28 Mr. Voss will not result in prejudice; it is early in the

1  litigation, Mr. Riley has highly competent and experienced
2  federal criminal defense counsel, Mr. Capozzi.  Mr. Riley is in
3  the position where one of his attorneys has a potential or actual
4  conflict, is an actual or potential witness, can be viewed as an
5  unsworn witness, and his interactions with Mr. Cramer and
6  connection to documents in Mr. Cramer's state case, unjustifiably
7  complicate and potentially prejudice Mr. Riley's case.  The
8  conflict cannot be avoided based on the government's right to use
9  Mr. Voss's conduct and its potential ramifications to attempt to
10 establish circumstantial links between Mr. Riley, Mr. Cramer, and
11 Mr. Leon.  In view of the potential for prejudice, the presence
12 of competent counsel of Mr. Riley's choice, Mr. Capozzi, and the
13 right to unconflicted counsel, Mr. Riley's choice of Mr. Voss as
14 counsel under the Sixth Amendment is overcome by the
15 disqualifying circumstances.  Mr. Riley's interests are fully
16 protected by his attorney of record, Mr. Capozzi.

17       For all these reasons, the government's motion to disqualify
18 attorney Barry V. Voss is GRANTED.

19       A further status conference is set for June 27, 2005, at
20 1:30 p.m. in Courtroom Two.

22 SO ORDERED.

24 DATED:  June 17, 2005.

                                        /s/ OLIVER W. WANGER
                                   _____
                                        Oliver W. Wanger
                                   UNITED STATES DISTRICT JUDGE